## Hosch, et al. v. Hosch's Executors, et al.

(Decided October 29, 1918.)

### Appeal from Jefferson Circuit Court. (Chancery Division No. 2).

1. Judicial Sales—When Judgment Not Premature.—Where, upon submission for an order of sale, all of the pleadings, proof and exhibits show a sale of indivisible property jointly owned and in possession is necessary, a judgment and order of sale is not premature because the master has not reported under a reference affecting only the proper distribution of the proceeds of the sale among the joint owners.

2. Judicial Sales—Appraisement.—The sale ordered herein was not to pay debts but was solely for the purpose of division under section 490 of the Civil Code, and no appraisement was necessary.

3. Judicial Sales—Inadequacy of Price.—Mere inadequacy of price alone is not a sufficient ground for setting aside a judicial sale regularly made.

4. Judicial Sales—Validity.—The purchase at a sale for the division of jointly owned property, by joint owners who had been trustees for the management of the property during the existence of the then expired trust, does not invalidate the sale.

BLAKEY, QUIN & LEWIS and THOMAS A. BARKER for appellants.

TRABUE, DOOLAN & COX and ROWAN HARDIN for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Frederick Hosch, on November 25, 1898, died testate, a resident of Jefferson county, Kentucky, leaving a widow, Barbara Hosch, and seven children, namely: appellants C. F. Hosch, George Hosch, and the appellees, Regina Hosch, William Hosch, Katie Hosch, Lena Hosch and Louis Hosch.

At the time of his death Frederick Hosch was engaged in the business of cleaning, dyeing and pressing clothing, and owned, in addition to this business, three parcels of real estate in the city of Louisville. By his will, which was duly probated, he directed that during the lifetime of his widow his business should be continued by his widow, Barbara Hosch, and two of his children, Regina Hosch and William Hosch, whom he named his executors and trustees; that at the termination of the trust, all of his property should be divided among his children, two-thirteenths of which he gave to each child except appellant, C. F. Hosch, who, because of advancements made to him, was to take but one-thirteenth in the final division of the property. The will further provided that during the continuance of the trust the profits of the business and the income from his estate, after the payment of all expenses, should be paid, one-half to his widow, and the other half to his children, two-twenty-sixths to each, except C. F. Hosch, who was to receive but one-twenty-sixth thereof. The daughter, Regina Hosch, as one of the executors and trustees, was empowered by the will to fix the salaries of such of the children as stayed at home and worked in the business. After the death of Frederick Hosch and the probate of his will, the executors and trustees named, qualified and

continued to act as such until the death of Barbara Hosch, which occurred on the 26th of January, 1915. After the death of the widow, Barbara Hosch, this action was filed by appellant, C. F. Hosch, seeking a sale of the property left by Frederick Hosch, and also a settlement by the executors and trustees named in the will. In his petition the plaintiff alleged that all of the property left by the testator was jointly owned and in the possession of the plaintiffs and defendants, and that same could not be divided without materially impairing its value, or the value of plaintiff's interest therein. The prayer of the petition asked that the cause be referred to the master to ascertain and report the amount of debts against the estate of the decedent and to settle the accounts of the executors and trustees, and that the rights of the devisees in the property under the will be adjudicated; that the business and each parcel of real estate owned by the decedent at his death be sold, and that there be a distribution of the proceeds thereof among the plaintiffs and defendants, according to their interests therein. Reference according to the prayer of the petition was made to the master but before he had finished taking the proof with reference to the matters referred to him, and before he had filed a report, the two defendants who were executors and trustees under the will, Regina and William Hosch, filed an answer and cross petition in which they denied the right of the plaintiff to demand an accounting of them as trustees, but nevertheless asking that the cause be referred to the master for a settlement of their accounts. Thereafter these same two defendants filed an amended answer, counterclaim and cross petition in which they alleged that the property left by Frederick Hosch was owned jointly by and in the possession of the plaintiffs and defendants, and was indivisible; that it was necessary that all of the real and personal property thus owned by them be sold in order that it might be divided among the parties to the action; and the defendants united in the prayer of the petition in asking that the property be sold for a division. Thereupon, all the parties being before the court, upon motion of these defendants and cross petitioners, the cause was submitted for a judgment and order of sale for a division among all the parties, and the court, upon the pleadings, exhibits and proof, adjudged that all of the described real and per-

sonal property was jointly owned by the parties in the proportions named in the will; that their interests therein were vested and in possession; that each piece of said property was indivisible, and that for division it was necessary that all be sold, and its sale by the master was ordered. It was provided, however, in the judgment that:

"The interest of the parties hereto in and to the property herein described is subject to the rights of the parties as between themselves and to such claims of creditors of said trust estate as may be established in this action, and it is ordered that the proceeds of the sales herein provided for shall be retained in court pending the determination of the rights of the parties and the claims against said estate."

Before the submission, defendants offered proof by affidavit that the business and each piece of real estate was incapable of division, and would have to be sold as a whole. The only proof offered by the plaintiff was the affidavit of Arthur E. Mueller:

"That in his opinion a sale of any of said property at the court house door at the present time would result in realizing on the property not more than 60 per cent of what could be realized on it at private sale under ordinary circumstances. That it is a well known fact that real estate values in city property at the beginning of a war are always depreciated, whereas such values increase at the close of the war and even during the progress of the war if the war lasts any great length of time."

1. The first insistence upon this appeal is that this judgment was premature, and that no order of sale should have been entered until the master had reported his findings under the order of reference, especially in view of the affidavit of Mueller that at that time, owing to the fact that war had been declared recently, real estate values were greatly and abnormally reduced. In view of the fact, however, that a sale for the purpose of division and distribution among joint owners was asked by the petition as well as the answer, counterclaim and cross petition of the defendants, and since, upon all of the pleadings and exhibits, such a sale was manifestly necessary before there could be a division

among these joint owners, and as the interest of each party was a vested interest in possession in indivisible property, no other fact needed to be established before a sale could be ordered; and the court did not need to await a report of the master, which could not affect the undisputed joint ownership of the parties or of the right of any or all of them to have the property sold for a division; but related merely to the proper distribution of the proceeds of the sale among the parties. The order of sale was not, therefore, premature, and the appellants are not entitled to a reversal of that judgment; nor was there anything in the affidavit of Mueller sufficient to defeat or defer indefinitely the right of any of these joint owners to insist upon their statutory privilege to have the property sold for the purposes of division.

2. The next insistence is that the court erred in overruling appellants' exceptions to the report of sale. The principal contention under this head is that the property was sold for debt, and not having been appraised by the master before sale, the sale was void. The basis of this contention is that as several or all of the defendants had filed with the master claims for their services rendered to the trustees in conducting the pressing and cleaning business during the existence of the trust, these claims were debts against the estate of the decedent, and that the sale was for the purpose of paying this indebtedness of the estate. But this contention is clearly without merit because the action is plainly under section 490 of the Code for a sale for division of indivisible property jointly owned and held, under which circumstances, as has been frequently held by this court, an appraisement was not necessary. The property was sold solely upon the ground that it was indivisible, and in accordance with the prayer of the petition as well as that of the answer, counterclaim and cross petition; and it was not sold to pay the debts of the decedent, of which there were none. The fact that the judgment provided that there should be no distribution of the proceeds of the sale until after a settlement was made by the trustees and an adjustment had of the claims of the several joint owners against the trustees during the existence of the trust did not make the sale one to pay debts or alter the fact that the sale was for the purpose

of division of jointly owned, indivisible property any;
more than would the fact that before a distribution
could be had, allowances would have to be made to the
executors and the trustees for their services and their
necessary expenses in administering the estate and con-
ducting the trust.

Appellants have also charged a conspiracy on the
part of the appellees to overreach them in the sale and
to purchase the property for themselves; but these
charges are not even sworn to nor is there a particle of
proof to sustain them. The sale was made by the com-
missioner of the court after due advertisement. Ap-
pellants attended the sale in person; and, before the
sale, in addition to the advertising by the commissioner,
they had banners printed and placed upon the property,
giving notice of the fact that it would be sold, and of
the time, terms and place of the sale. They insinuate,
but offer no proof to support the insinuation, that ap-
pellees caused these banners to be removed from the
property. There is an entire absence of any proof to
sustain this charge.

The Third street lot sold for $9,000.00, and while
one witness, testifying for the appellants, fixes the value
at a much higher price, the evidence as a whole, in our
judgment, sustains the chancellor's finding that it
brought approximately its full value, and there is no
evidence that upon another sale it would bring more.
The Market street lot sold for $2,500.00, and for this
property the appellants have, since the sale, found a
responsible person who offers, if it is resold, to pay'
$3,000.00 for it; but this fact alone, in our judgment, is
not sufficient to authorize the setting aside of a judicial
sale that has been regularly made after due advertise-
ment, for, as said by the chancellor in his opinion in
overruling the exception to the sale of this lot:

"If there were not occasional bargains to be had at
public sales there would be few in attendance upon sales.
If the court were to set aside every sale because some
one afterwards offered more than the successful bid-
der, there would be such discouragement of bidders as
to make judicial sales utterly ineffectual. It is better
that a few purchasers get an occasional bargain than
that the court should endeavor to bring about a loss to
the bidders at its sales and thus discourage bidding."

Even if we assume, as we no doubt should, that this offer proves that this property was sold at an inade-quate price, the inadequacy is not gross nor accompanied by any circumstances which would tend to cause an explanation of inadequacy, nor was it attended by any apparent unfairness or impropriety or oppression on the part of those connected with the sale. Hence this case does not, in our judgment, come within the rule announced in Morton v. Wade, Jr., et al., 175 Ky. 564. The fact that the purchasers at the sale were five of the seven joint owners, two of whom had been trustees under the will for the management of the property during the existence of the then expired trust, is not a circum-stance that in any way tends to invalidate the sale or to indicate that it was unfair or oppressive as against those who did not join in the purchase; since the property was not being sold in the furtherance or for any purpose of the trust but solely for division after the expiration of the trust.

Wherefore the judgment is affirmed.